IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 07-cv-00525-WYD-BNB

THE NEIMAN MARCUS GROUP, INC.;
BERGDORF GOODMAN, INC.; and
NM NEVADA TRUST,

              Plaintiffs,

v.

NAME.COM, LLC A/K/A NAME.COM;
NAME.NET LLC A/K/A NAME.NET; and
SPOT DOMAINS LLC A/K/A DOMAINSITE.COM,

              Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 12(B)(1)**

---

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), defendants NAME.COM, LLC A/K/A NAME.COM, NAME.NET LLC A/K/A NAME.NET, and SPOT DOMAINS LLC A/K/A DOMAINSITE.COM respectfully move to dismiss the Complaint on the grounds that these claims fail to state a claim upon which relief may be granted and for lack of federal jurisdiction.

## I.     BACKGROUND

This case involves the Internet and registration of domain names. Domain names are shorthand addresses used to direct Internet browsers to a webpage. Domain names revolutionized the Internet's accessibility by substituting words and letters for complex, changing and seemingly random eleven-digit numerical strings. Without domain names, the Internet would be much more difficult to navigate. Instead of typing www.coloradorockies.com,

750725 v7/PA

a user would need to know the current cumbersome eleven-digit IP address for the Rockies webpage.

ICANN is responsible for the global coordination of the Internet's system of unique identifiers.  These include domain names, as well as the addresses used in a variety of Internet protocols. Computers use these identifiers to reach each other over the Internet.  *See* ICANN, http://www.icann.org.   ICANN's administration of domain names is similar to the FCC's administration of telephone numbers.  Registrars in turn "wholesale" domain registrations via domain name registrars who must be accredited with ICANN and who have a contractual relationship with the registry.  Registrars provide the actual registration services to the public. Defendants are domain name registrars.

An apt analogy to Internet domain names, such as www.coloradorockies.com, are vanity telephone numbers[1]:

- The *domain name* would be the vanity phone number for the Colorado Rockies, 303-ROCKIES;

- The actual *IP address* would correspond with the domain name or, here, the phone number 303-762-5437.  This would be the eleven-digit number string;

- The *registrant* of the domain name would be the Colorado Rockies Baseball Club, Ltd.; and

- The *registrar* or the entity responsible for assigning and recording rights in the phone number would be Qwest Communications.

---

[1] *See generally,* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:17.1 (4th ed. 2007) (Domain name analogy to phone number discussion).

750725 v7/PA

Plaintiffs have sued the equivalent of Qwest Communications for alleged wrongdoing by the Colorado Rockies Baseball Club.   For the reasons set forth below, their case cannot be maintained as a matter of law.

## II.   INTRODUCTION

Plaintiffs are big luxury department stores who sell high-priced goods manufactured by third parties.  Plaintiffs are frustrated by the very nature of the Internet and have contorted the law to protect their established way of doing business.  They have targeted an easy scapegoat – a small Denver Internet domain name registrar.  Plaintiffs are seeking a remedy where there is no wrong.

Plaintiffs bring claims relating to certain domain names which allegedly bear resemblance to Plaintiffs' registered trademarks.  Plaintiffs base their entire complaint on their erroneous assumption that Defendants are not only the *registrars* for all the domain names, but are the actual *registrants* as well.  This assumption is directly contradicted by plaintiffs' exhibits which are attached to and incorporated within the Complaint.

A summary of Defendants' motion follows:

- Under established law, *registrars* cannot be liable under the Anti-Cybersquatting Consumer Protection Act ("ACPA") for cybersquatting.   The ACPA limits liability to domain name *registrants* and their authorized licensees.  Defendants are not the actual domain name owners of the Related Domain Names.  Plaintiffs' claims under the ACPA fail to state a claim upon which relief may be granted and should be dismissed.

- Plaintiffs' general claims under the Lanham Act should be dismissed because Plaintiffs have not successfully alleged that Defendants make a use in commerce of Plaintiffs' marks.  Defendants must make a commercial, trademark use of Plaintiffs' marks in order for liability to attach.  Without a showing of this type of use, Plaintiffs' Lanham Act claims must fail and should be dismissed.  Because Defendants have not made use of the marks, they have also not acted in bad faith and should not be held liable based on the ACPA.

- In addition, Plaintiffs' general Lanham Act claims should be dismissed as preempted by the ACPA.  Under the Supreme Court ruling in *Dastar*, courts should not interpret intellectual property laws in such a way that conflicts with other intellectual property laws.

- Dismissal of the federal claims lead to dismissal of the four state claims due to lack of federal jurisdiction.

## III.    STATEMENT OF FACTS[2]

Plaintiffs bring an action[3] for cybersquatting, trademark infringement, false designation

---

[2] Pursuant to Practice Standards (May 30, 2006) issued by Judge Daniel, Defendants state that the matters presented herein that may lie outside the pleadings are:

    (a) the undisputed existence and wide acceptance of domain name "proxy" or "private" domain name registration.  Most, if not all, major domain name registrars offer this service.  *See, e.g.,* NetworkSolutions, Register domain names privately with Network Solutions, https://www.networksolutions.com/domain-name-registration/private.jsp; GoDaddy.com, Private Domain Registration, https://www.godaddy.com/gdshop/dbp/landing.asp?ci=257*;* and

    (b) that Defendant Name.net LLC has registered the trade name in Colorado "Secure Whois Information Service."

Both points are matters of public record, which this court may notice under Fed. R. Evid. 201, are undisputable and should not convert this motion into one of summary judgment.

750725 v7/PA

of origin, trademark dilution, violation of the Colorado Consumer Protection Acts, and unfair competition under Colorado state law.  Complaint ¶ 1.  Plaintiffs Neiman Marcus and Bergdorf Goodman operates a nationwide chain of retail stores and a nationwide mail order catalog retail business.  Complaint ¶¶  11, 18.   Plaintiffs own trade names, trademarks and service marks for NEIMAN-MARCUS, NEIMAN MARCUS, and BERGDORF GOODMAN.  Complaint ¶¶ 12, 20.  Defendants are ICANN accredited domain name registrars.  Complaint ¶¶ 33-35.

Several domain names ("Related Domain Names") have been registered through Defendants' registrar services which allegedly bear resemblance to Plaintiffs' marks.  Complaint ¶ 64.  Defendants are listed as the *registrars* of the Related Domain Names.  Exhibit 7; *see* Complaint ¶¶ 30-35.  Plaintiffs allege, on information and belief,[4] that Defendants are also the registrants of the Related Domain Names.  Complaint ¶ 38.  However, the exhibit which forms the basis of this allegation actually identifies "Secure Whois Information Service" as the registrant for the Related Domain Names.  Exhibit 7.   Secure Whois Information Service is a registered trade name for the registrar Name.net.  This is a matter of Colorado public record.  Secure Whois Information Service is not the actual registrant of the Related Domain Names; it is a proxy service.  S*ee generally,* Notes 1, 5 and accompanying text; Exhibit 3 ("[domain name] may be available. . . . Name.net will forward offers to the current domain holder. . . This does not

---

[3] Defendants deny many of the allegations in the Complaint, but for the purposes of this motion, assume the truth of the allegations pled, unless contradicted by documents referred to in the complaint.  *Seamans v. Snow*, 84 F.3d 1226, 1231 (10th Cir. 1996); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).
[4]   All of Plaintiffs' substantive allegations are made on information and belief.  Blanket information and belief allegations have been frowned upon by courts in this Circuit due to recent changes in certain statutory pleading.  *See generally, Pirraglia v. Novell, Inc.,* 339 F.3d 1182, 1188 (10th Cir. 2003); *Sins v. Janus Capital Management, LLC*, Nos. 04-CV-01647-WMD & 04-CV-02395-MSK, 2006 WL 3746130 (D. Colo. Dec 15, 2006).

750725 v7/PA

assure that the domain is for sale or that the domain holder will sell the name."). Proxy services,

commonplace offerings by domain name registrars, allow for the equivalent of "unlisted phone

numbers" for domain names. As a proxy service, Secure Whois Information Service places its

contact information in the WHOIS record in place of the owners who want their privacy

protected.[5]

## IV.  ARGUMENT

### A.  Legal Standard on Motion to Dismiss

For purposes of considering the Motion to Dismiss, Defendants must accept the facts

alleged in the Complaint as true. *Seamans v. Snow*, 84 F.3d 1226, 1231 (10th Cir. 1996).

However, the Court is not "required to accept as true conclusory allegations that are contradicted

by documents referred to in the Complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

1295-96 (9th Cir. 1998). In fact, in the presence of a conflict as between allegations and attached

documents, the courts have regularly held that the allegations are disregarded in favor of the

---

[5] Complaint ¶¶ 42-44 and Exhibits 3 and 7 support and identify this proxy service relationship. The Related Domain Names' "whois" information shown in Exhibit 7 lists "Secure Whois Information Service", the proxy service of Name.net LLC, on behalf of the actual registrants. Proxy registration is permitted by the ICANN agreement referenced in Complaint ¶ 43. *See, e.g. accord WWF-World Wide Fund for Nature aka WWF Int'l v. Moniker Online Services LLC*, WIPO Case No. D2006-0975 (Nov. 1, 2006). ("Mr. Ricks used a proxy service to achieve registration of the disputed Domain Name. This is becoming an increasingly common occurrence. Under this arrangement the name of the true registrant is not displayed in the Registrar's WHOis database. It is said that proxy registrations have become popular with the rise of automatic harvesting of email and postal addresses and telephone numbers for the purpose of email spamming, direct marketing by mail and phone and also for fraud and identity theft."); *CyBerCorp Holdings, Inc. v. Jay Allman,* Claim Number: FA0403000244090 at p. 6-7 (May 14, 2004) ("Respondent registered the at-issue domain name via a proxy service through registrar Go-Daddy. By using this service, the proxy's contact information, rather that the registrant-in-fact's contact information appears on the registration record. Complainant argues that the use of a proxy registrant is *per se* bad faith. This panel disagrees. There are numerous benign reasons why one would want to buffer one's identity or have another control a domain name by using an agent or proxy").

750725 v7/PA

exhibit.  Defendants are entitled to dismissal of all federal claims pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to state a claim upon which relief may be granted.  Dismissal of the federal claims warrants dismissal of the state claims.  *See*, *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction.").

### B.      Dismissal of the Anti-Cybersquatting Consumer Protection Act Count

A valid ACPA claim requires that the plaintiff allege and prove that the defendant: (a) is the domain name *registrant* or that registrant's authorized licensee; (b) has registered, trafficked in, or used a confusingly similar domain name; and (c) such activities were undertaken with a bad faith intent to profit.  15 U.S.C. § 1125(d).   Defendants are domain name registrars. Complaint ¶¶ 31-35.  Although Plaintiffs have asserted that Defendants are also the registrants of all the Related Domain Names, such is alleged only on information and belief.  Complaint ¶¶ 36-38, 79.   However, Plaintiffs' own Exhibit 7 directly contradicts these allegations.  S*ee also* Exhibit 3.  Exhibit 7 identifies "Secure Whois Information Service" as the registrant for each of the alleged infringing domain names.  If Defendants were both the registrants *and* registrars for the Related Domain Names, the "Registrant" and "Registrar" names would be identical.  Exhibit 7 conclusively establishes that Name.com and DomainSite acted only as the registrars and not registrants.

### 1.      Registrars are not liable under the ACPA.

The ACPA limits liability to the domain name registrant or a registrant's authorized licensee.  15 U.S.C. § 1125(d)(1)(D).  Courts agree that registrars should not be held liable for

ACPA violations. *Bird v. Parsons*, 289 F.3d 865, 881 (6th Cir. 2002) (granting defendant-registrar's motion to dismiss claim of cybersquatting); *American Girl LLC v. Nameview Inc.*, 381 F. Supp. 2d 876, 881-82 (E.D. Wis. 2005) (declining to grant temporary restraining order against registrar because defendant had "done no more than accept the registration of the domain name."). Registrars "register domain names on a first-come, first-served basis…and are not obliged to examine domain names to ensure that the registrant is not violating the rights of a third-party." *Id.*

### 2.    Defendants do not "register, traffic in, or use" the domain names.

Even if the ACPA did not exclude registrars from liability, Plaintiffs' claims of cybersquatting still fail because Plaintiffs have offered nothing beyond conclusory on information and belief statements that Defendants "register, traffic in, or use" the Related Domain Names. 15 U.S.C. § 1125(d)(1)(A)(ii). The identification of the "person who registers, traffics in or uses" a domain name was addressed in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648, 655 (N.D. Tex. 2001) where the court held that "'registers' … obviously refers to a person who presents a domain name for registration, not to the registrar."

The "traffics in" clause is defined in § 1125(d)(1)(E) as "transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration." Plaintiffs have not alleged that Defendants have made any such transactions in connection with the Related Domain Names.[6] Thus, even if Defendants were a registrant, Plaintiffs' case must still fail since they

---

[6] Plaintiffs have alleged the sale of righteouscoffee.com, *but this is not asserted to be a trademark of Plaintiffs*. Further, Exhibits 3-5 dealing with offers of sale clearly represents Name.net as the proxy for the actual registrant. Ex. 3 states "[domain name] may be available,*"*

750725 v7/PA

have made no allegation that any Defendant "traffics in" a Related Domain Name as defined by

§ 1125(d)(1)(E). The mere registration of a domain name is not a "use" that subjects the

registrar to liability under the ACPA. *American Girl*, 381 F. Supp. 2d at 881-82. Similarly, the

mere offering to be the conduit of unsolicited offers to purchase/sell domain names cannot

satisfy the "traffics in" requirement. *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002).

### 3. Defendants conduct is not in bad faith.

Plaintiffs cannot show the bad faith intent required under the ACPA without a showing

that Defendants knew their use of Plaintiffs' marks was unlawful.[7] *See* Note 8 and accompanying

text. Because Plaintiffs fail to make such a showing, their ACPA claims must fail.

### C. The Court Should Dismiss Plaintiffs' Lanham Act Claims Because Defendants Do Not "Use" Plaintiffs' Marks.

Liability under the Lanham Act for trademark infringement, false designation of origin

and trademark dilution is premised upon an initial showing that the defendant undertook a "*use*"

of the plaintiff's mark and that the use was "*in commerce*". These are two separate and distinct

---

and further states "Name.net will forward offers to the current domain holder…This does not assure that the domain is for sale or that the domain holder will sell the name." This directly contradicts the allegations in the complaint and the allegations regarding righteouscoffee.com do not support a claim for relief. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d at 295-96.

[7] Non-exclusive factors used to determine bad faith in ACPA cases are enumerated in 1125(d)(1)(B)(i). The legislative history shows that Congress intended bad faith to encompass "abusive conduct", rather than mere "negligent uses of a domain name . . ." S. Rep. No. 106-140 (1999); 145 Cong. Rec. S10513 (daily ed. Aug. 5, 1999) (statement of Sen. Hatch). "Good faith, innocent or negligent uses of a domain name that is identical or confusingly similar to another's mark or dilutive of a famous mark are *not* covered by the legislation's prohibition. Thus, *registering a domain name while unaware that the name is another's trademark would not be actionable.* Nor would the use of a domain name that contains a trademark for purposes of protest, complaint, parody or commentary satisfy the requisite scienter requirement. Bad-faith intent to profit is required for a violation to occur." 145 Cong. Rec. S 10513 (daily ed. Aug. 5, 1999) (statement of Sen. Leahy, emphasis added). The requirement of bad faith intent is prevalent throughout the statute. *See, e.g.* 15 U.S.C. § 1125(d)(2)(D)(ii).

elements.   15 U.S.C. §1114(1) and 15 U.S.C. §§ 1125(a)(1), (c); *1-800 Contacts*, 414 F.3d at 406-07; *Brookfield Comm'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1051-53 (9th Cir. 1999) (describing separate "use in commerce" requirement, holding that mere registration of domain name does not constitute "use in commerce.").   Trademark law protects against the *trademark use* of another's mark when that use creates confusion about the source or affiliation of a product or service; it does not forbid *non-trademark* use.   *See, e.g., Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co.*, 4 F.3d 327, 335 (4th Cir. 1993) (court refused to stretch trademark use beyond its intended bounds, noting that typical Lanham Act claim charges defendant with using a mark that confuses public about source of goods or services; Lanham Act does not encompass instances where there is no trademark use).

Further, the use of a mark is potentially infringing only if the alleged infringer makes a "'trademark use,' that is, one indicating source or origin." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990).   Thus, not every use of a mark is a "use" within the meaning of the Lanham Act that triggers liability.[8]   Where a party uses a mark in a "'non-trademark' way -- that is, in a way that does not identify the source of a product -- then trademark infringement and

---

[8] 15 U.S.C. § 1127 defines "use in commerce":
"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--
(1) on goods when--
(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
(B) the goods are sold or transported in commerce, and
(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services."

750725 v7/PA

false designation of origin laws do not apply." *Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003), *citing New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992).   Plaintiffs fail to demonstrate how Defendants engaged in <u>trademark use</u> of Plaintiffs' marks.

The use of domain names "to designate host computers on the Internet" is not the sort of use that is prohibited by trademark law. *Bird*, 289 F.3d at 879 (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 956-57 (C.D. Cal. 1997)).  The *Bird* court faced facts very close to those presented here.  Plaintiff operated a business under the trade name Financia, Inc. and owned the domain name financia.com, while the defendant, like Defendants here, was a registrar of Internet domain names. *Bird*, 289 F.3d at 879-80.  Plaintiff tried to hold the registrar accountable for a third party's registering of the allegedly infringing "efinancia.com." The Sixth Circuit rejected plaintiff's allegations of trademark infringement and dilution, holding that "even though a registrar sells domain names, and thereby profits from the names that registrants choose, it 'does not trade on the value of domain names as trademarks.'"  *Id.* at 879, citing *Lockheed Martin Corp.* at 960; *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 627 (6th Cir. 1998) (Merritt, J., concurring) ("When a domain name is used only to indicate an address on the Internet and not to identify the source of specific goods and services, the name is not functioning as a trademark."); *McCarthy on Trademarks and Unfair Competition*  at § 7:17.1 ("[D]omain names. . .which permit one to locate and communicate with a place or a person, do not, without more, function as trademarks."); *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 412 (2d Cir. 2005) (use of plaintiff's domain names in a directory to trigger advertisements

750725 v7/PA

not trademark use because defendant using address "precisely because it is a website address" --

not to identify source of its advertisers' products).

Plaintiffs gloss over and muddle the use requirement, turbidly alleging that Defendants

use Plaintiffs' marks in commerce "on or in connection with the … Related Domain Names,

websites, and pop-up and pop-under advertisements."   Complaint ¶¶ 127, 137.   These

allegations[9] once again fly in the face of Plaintiffs' own exhibits, which do not identify

Defendants as the registrants, owners or users, of the Related Domain Names.  Exhibit 7; *see*

*also* Exhibit 3.   The Ninth Circuit has stated that the mere acceptance of a domain name

registration is not a commercial use within the meaning of the Lanham Act.  *Lockheed Martin*

*Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 956-59 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980

(9th Cir. 1999); *see also Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) (affirming the dismissal

of trademark and unfair competition claims against defendants who were registrars).  On the face

of the pleadings, Defendants' handling of the Related Domain Names is similarly limited to their

registration, and such an act does not constitute a "use in commerce" needed for trademark

claims.

The recent spate of keyword or AdWord[10] advertising cases provides a final important

supportive body of law.  In the keyword cases, the plaintiffs are typically trademark owners who

_____

[9] Plaintiffs actually admit that some of the domain names they claim are infringing were actually deleted by the Defendants and not allowed to register at all.  Complaint ¶¶ 40, 65.  It is simply inconceivable that domain names which were not concretely registered could constitute trademark use under the Lanham Act or bad faith registration under the ACPA.

[10] "Using AdWords, an advertiser can bid on terms (keywords) an Internet user might enter as a search term on Google. [Google] then links the advertisement and hyperlink (sponsored link) to the keyword the advertiser purchased. When an Internet user enters the keyword, it triggers the sponsored link to appear on the search results page either to the right or immediately above the search results." *Rescuecom Corp.*, 456 F. Supp. 2d at 495.

750725 v7/PA

are suing search engines such as Google under the Lanham Act for employing the plaintiffs'

marks as keywords to trigger competitors' advertisements.  *See, e.g. Rescuecom Corp. v. Google,*

*Inc.*, 456 F. Supp. 2d 393, 396-97 (S.D.N.Y. 2006).  Courts addressing this issue have found that

the defendants in these actions are not liable for trademark infringement because they have not

engaged in a trademark use of the plaintiffs' marks.  *Rescuecom Corp.*, 456 F. Supp. 2d at 400-

04; *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 415-16, *motion*

*for reconsideration denied*, 431 F. Supp. 2d 425 (S.D.N.Y. 2006).

More specifically, because the defendant's use was purely internal and not visible to the

public, the Court held that there was no trademark use, likening such an internal use to an

individual's private thoughts about a trademark.  *Rescuecom Corp.*, 456 F. Supp. 2d at 403,

citing *1-800 Contacts*, 414 F.3d at 409.  Similarly here, Defendants' use of the Related Domain

Names is an internal registration and linking of a domain name to a machine address.  The only

visible use of the Related Domain Names is actually committed by the Internet browser user,

when he types the website address into the browser window, and in any event by the actual

owner of the domain name and not by the registrar.  Without engaging in a visible use,

Defendants have not engaged in actionable trademark use.

Because Plaintiffs have not successfully alleged Defendants' use in commerce of

Plaintiffs' trademarks, Plaintiffs Lanham Act claims fail to state a claim upon which relief may

be granted and should therefore be dismissed.

**D.      Plaintiffs' General Lanham Act Claims Are Preempted By the ACPA.**

In light of the U.S. Supreme Court's holding in *Dastar*, Plaintiffs' Lanham Act claims

should be dismissed as preempted by the ACPA, whether the ACPA count is dismissed or not.

The seminal case of *Dastar Corp. v. Twentieth Century Fox Film Corp.* rejected relief under the Lanham Act's false designation of origin provisions, 15 U.S.C. § 1125(a), on the grounds that it conflicts with other intellectual property statutes – in that case the Copyright Act.  539 U.S. 23, 34-35 (2003).

Specifically, the Supreme Court explained that allowing a cause of action under the Lanham Act for a misrepresentation would render the carefully crafted Visual Artists Rights Act of 1990 superfluous and create a "species of mutant copyright law," a result which is to be avoided.  *Id.* at 35.  *Dastar* in essence restricts the expansion of intellectual rights which would bring them in conflict with other intellectual property laws, in particular recognizing that the Lanham Act's false designation of origin provisions can be stretched to the point of abuse.

Plaintiffs' proposed application of general Lanham Act provisions to Defendants' behavior presents the same nature of conflict with the ACPA that the Supreme Court warned against in *Dastar*.  Plaintiffs' trademark, false designation of origin and dilution claims are aimed at Defendants' alleged cybersquatting on the Related Domain Names.  Complaint ¶¶ 127, 137. Congress has specifically addressed the issue of cybersquatting with the enactment of the ACPA. In doing so, Congress limited liability for confusing uses of domain names to registrants and their authorized licensees.  15 U.S.C. § 1125(d)(1)(D).  If the plaintiffs are allowed to circumvent established laws on domain names and hold Defendants liable under general Lanham Act provisions, the case will fall into the same trap that the Supreme Court warned against in *Dastar*: creating a mutant species of ACPA cybersquatting.

As such, Plaintiffs' Third through Tenth Claims for Relief are preempted by *Dastar* and should be dismissed for failure to state a claim upon which relief can be granted regardless of the

750725 v7/PA

court's decision on dismissal of the ACPA counts.

> **E.      No Federal Questions Remain, and The Court Should Dismiss Plaintiffs' State Law Claims For Want of Jurisdiction.**

The Colorado state claims are founded upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Complaint ¶ 2.  None of these claims raise a federal question.  Accordingly, after dismissal of the federal counts, the Court is free to dismiss these without prejudice. *Friedlob v. Trustees of Alpine Mut. Fund Trust*, 905 F. Supp. 843, 860 (D. Colo. 1995).

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that this honorable Court dismiss the federal counts for failure to state a claim and further request that this Court dismiss the state law claims for lack of subject matter jurisdiction.  Defendants request their reasonable attorneys' fees and costs as the prevailing party if this motion is granted.

Dated:  May 31, 2007

/s/ Andrew Hartman
Andrew Hartman
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, Colorado 80021-8023
Phone:  (720) 566-4200
Facsimile: (720) 566-4099
E-mail: ahartman@cooley.com

Christine Hsieh
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square, 4th Floor
3000 El Camino Real
Palo Alto, CA  94306
Phone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Defendants

750725 v7/PA

CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2007 I electronically filed the foregoing Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

gsmith@fwlaw.com

and I hereby certify that a copy of the foregoing Defendants' Motion to Dismiss was placed in the United States Mail, postage prepaid, addressed to:

Gregory C. Smith
Fairfield and Woods, P.C.
1700 Lincoln Street
Denver, Colorado 80203-4524
Tel: (303) 830-2400
Fax: (303) 930-1033
E-mail: gsmith@fwlaw.com

Attorney for Plaintiffs
The Neiman Marcus Group, Inc.,
Bergdorf Goodman, Inc.,
NM Nevada Trust

Dated:  May 31, 2007                       /s/ Christine Hsieh
                                          Christine Hsieh
                                          COOLEY GODWARD KRONISH LLP
                                          Five Palo Alto Square, 4th Floor
                                          3000 El Camino Real
                                          Palo Alto, CA  94306
                                          Phone: (650) 843-5000
                                          Facsimile: (650) 857-0663
                                          Attorney for Defendants

750725 v7/PA